UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20 CR 383 JAR DDN |
| | ) | |
| RONALD FREDERICK GALES | ) | |
| aka "Stink"; "Big Stink"; | ) | |
| | ) | |
| Defendant. | ) | |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1.  PARTIES:**

The parties are the defendant Ronald Frederick Gales (hereinafter GALES or "Defendant"), represented by defense counsel Jermaine Wooten, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri.  This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri.  The Court is neither a party to nor bound by this agreement.

**2.  GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts One, Eleven, Twelve, and Thirteen of the Superseding Indictment, the government agrees to move for dismissal of Counts Four, Five, Six, Seven, Eight, Nine, and Fourteen at the time of the sentencing and further agrees that no further federal prosecution will be brought in this District relative to Defendant's violations of federal

1

law, known to the United States at this time, arising out of the events set forth in the Superseding Indictment and the events surrounding Defendant's arrest on January 28, 2021, at which time Defendant was in possession of an approximately one kilogram of a mixture or substance containing cocaine with the intent to distribute the cocaine and an additional firearm, which he possessed in furtherance of a drug trafficking crime.  The government further agrees to not seek statutory enhancement of defendant's sentence pursuant to Title 21, United States Code, Section 851(a).

The defendant acknowledges that this disposition confers upon the defendant the benefit of not exposing him to an additional five (5) year mandatory minimum sentence that defendant would be required to serve consecutive to any other term of imprisonment imposed if the defendant were to be convicted of Count 14, and the benefit of not exposing him to an additional five (5) year mandatory minimum sentence if the defendant were to be charged with and convicted of an additional count of violating Title 18, United States Code, Section 924(c) based on the events surrounding his January 28, 2021 arrest.

In addition, the parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case.  The parties also agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea.  The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a).  The parties

further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Counts One, Eleven, Twelve, and Thirteen of the Superseding Indictment, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to:

    a.  One Taurus Judge .45 caliber revolver bearing serial number CP783474; and

    b.  One Smith & Wesson M&P 40 Shield .40 caliber semi-automatic pistol bearing serial number HWX2775;

    c.  Approximately forty-six thousand dollars ($46,000.00) in United States Currency seized from RONARLD FREDERICK GALES on October 28, 2019.

## 3.  ELEMENTS:

**COUNT ONE:**    As to Count One, the defendant admits to knowingly violating Title 21, United States Code, Sections 846 and 841(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

    **(i)**    Beginning at a time unknown to the Grand Jury, but including November of 2018, continuing through October 28, 2019, within the Eastern District of Missouri, the Defendant and other persons reached an agreement or came to an understanding to distribute and possess with intent to distribute cocaine and cocaine base, Schedule II controlled substances, to another individual;

    **(ii)**    The Defendant voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and

3

   **(iii)**     At the time the Defendant joined in the agreement or understanding, he knew the purpose of the agreement or understanding; and

   **(iv)**     That the quantity of cocaine and cocaine base attributable to the defendant, as part of his participation in the conspiracy, and as a result of his own conduct and the conduct of other conspirators reasonably foreseeable to him, is 5 kilograms or more of cocaine and 28 grams or more of cocaine base.

**COUNT ELEVEN**:  As to Count Eleven, the defendant admits to knowingly violating Title 21, United States Code, Section 841, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

   **(i)**     On or about October 29, 2019, within the Eastern District of Missouri, the Defendant was in possession of more than 500 grams of cocaine;

   **(ii)**     The Defendant knew that he was in possession of cocaine, a Schedule II, a controlled substance drug; and

   **(iii)**     The Defendant intended to distribute some or all of the cocaine to another person.

**COUNT TWELVE**: As to Count Twelve, the defendant admits to knowingly violating Title 21, United States Code, Section 841, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

   **(i)**     On or about October 29, 2019, within the Eastern District of Missouri, the Defendant was in possession of more than 28 grams of cocaine base;

   **(ii)**     The Defendant knew that he was in possession of cocaine base, a Schedule II, a controlled substance drug; and

**(iii)**     The Defendant intended to distribute some or all of the cocaine base to another person.

**COUNT THIRTEEN**:     As to Count Thirteen, the defendant admits to knowingly violating Title 18, United States Code, Section 922(g), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**(i)**     On or about October 28, 2019, within the Eastern District of Missouri, the defendant knowingly and intentionally possessed one or more firearms;

**(ii)**     That prior to October 28, 2019, the defendant had been convicted of one or more crimes punishable by a term of imprisonment exceeding one year;

**(iii)**     That on October 28, 2019, the defendant knew that he had been convicted of one or more crimes punishable by a term of imprisonment exceeding one year; and

**(iv)**     That the aforementioned firearms traveled in interstate commerce prior to the defendant's possession of them on October 29, 2019.

## 4.  FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial.  These facts may be considered as relevant conduct pursuant to Section 1B1.3:

In or around 2018 and 2019, in the Eastern District of Missouri and elsewhere, Defendant RONALD FREDERICK GALES conspired with STEPHANIE WADE, AMOS VONZELL BLANCHARD, JR., DANNY GATES, JR., GARY MCKAY, and JAMES ANTHONY RICHARDSON, and others, to commit the offense of conspiracy to distribute cocaine and cocaine

base.  Defendant RONALD FREDERICK GALES, knowing the purpose of the agreement and conspiracy, knowingly joined it while it was in effect.

In 2018 and 2019, investigators with the Federal Bureau of Investigation (FBI) and the St. Louis County Police Department (SLCPD) conducted an investigation of a drug trafficking organization (DTO) whose object was to distribute cocaine and cocaine base and which was principally supplied by the defendant, RONALD FREDERICK GALES, assisted by JAMES ANTHONY RICHARDSON.  Investigators discovered that ounce-level cocaine and cocaine base distributors operating in and around St. Louis County, Missouri, including AMOS VONZELL BLANCHARD, JR., STEPHANIE WADE, DANNY GATES, JR., and GARY MCKAY, and others, were obtaining cocaine and cocaine base for redistribution from GALES, often contained in a black glove.

On November 5, 2018, detectives with SLCPD obtained and executed a state search warrant at DANNY GATES, JR.'s residence located at 3278 Cross Keys, Apartment 3, St. Louis, Missouri 63033.  GATES was subsequently arrested by SLCPD detectives, and during the subsequent search of his person, GATES was found to be in possession of approximately six (6) ounces of cocaine base, a plastic bag of marijuana and a black digital scale.  BLANCHARD had previously converted, or "cooked," powder cocaine supplied by GALES into the cocaine base seized from GATES on November 5, 2018.  This cocaine base was also analyzed by an expert forensic chemist with the St. Louis County Crime Laboratory and confirmed to be approximately 153 grams of cocaine base.

On January 15, 2019, following several user-quantity, controlled drug purchases from BLANCHARD utilizing confidential informants, detectives with SLCPD, with the assistance of

FBI, executed a Missouri state search warrant at BLANCHARD's stash house located at 6440 Ridge Avenue, St. Louis, Missouri 63133.  As the search warrant was being executed at 6440 Ridge Avenue, SLCPD detectives observed BLANCHARD holding a black latex glove while attempting to open a bedroom window from inside the residence.  After the search warrant was executed, team members located the glove, and found it to contain approximately over 66 individual clear plastic baggies containing cocaine base, 52 tablets of methamphetamine, and a small amount of powder cocaine.  The cocaine and cocaine base seized from BLANCHARD were supplied by GALES.  The cocaine base was later analyzed by an expert forensic chemist with the St. Louis County Crime Laboratory and confirmed to be approximately 32 grams of cocaine base.

FBI and SLCPD subsequently developed additional confidential sources and between April and September and conducted six (6) controlled purchases of cocaine from GALES.  On two occasions, after arranging the drug transaction with the confidential source, GALES utilized co-defendant James RICHARDSON to deliver the cocaine.  All of the narcotics obtained from GALES in the controlled purchases were analyzed by the St. Louis County Police Department Crime Laboratory and determined to be cocaine with a total weight of approximately 295.3 grams.

On August 30, 2019, United States District Judge Rodney W. Sippel, Eastern District of Missouri, signed an order authorizing the initial interceptions of communications over GALES's telephone number (314) 398-2170.  Monitoring of communications began on September 3, 2019. On October 2, 2019, United States District Judge Henry E. Autrey, Eastern District of Missouri, signed an order authorizing the extension of interception of communications over GALES's telephone number.  Monitoring of communications began pursuant to this order on October 2, 2019 and expired on November 2, 2019.

Based on intercepted calls and surveillance, investigators learned that GALES was selling one-half ounce to an ounce of cocaine to co-defendant Stephanie WADE on an approximately weekly basis for resale by WADE.  Specifically, on September 7, 8, and 9, 2019, investigators intercepted calls between WADE and GALES setting up a transaction for GALES to sell WADE an ounce of cocaine for $950.  On September 9, 2019, investigators monitored calls and accordingly observed WADE and GALES meet at a Taco Bell on West Florissant Avenue to complete the transaction.  On September 28, 2019, GALES received a telephone call from WADE. During the call, GALES greeted WADE, "What' up Steph?", to which WADE replied, "My usual."  Based upon previous calls between GALES and WADE, investigative team members believe "the usual" to be in reference to one (1) ounce of cocaine.  Investigators then believe GALES and WADE met up to complete the transaction, because later that day, GALES placed a call to WADE and advised, "…Steph, I'm pulling up."  Investigators continued to intercept additional calls between GALES and WADE setting up drug transactions and ultimately arrested WADE in possession of a small amount of cocaine base on October 22, 2019, immediately following a brief meeting between WADE and James RICHARDSON.

Also during the investigation, on October 7, 2029 agents conducting surveillance of GALES's residence at 1510 Kappel Drive observed GALES leave and drive to the Taco Bell located at 9951 W. Florissant.  They observed him meet with co-defendant Gary MCKAY. During a subsequent traffic stop of MCKAY police located a black rubber glove which contained what was later confirmed by laboratory analysis to be approximately 107 grams of powder cocaine.  The 107 grams of powder cocaine was sold to MCKAY by GALES.

On October 28, 2019, investigators executed a federal search warrant at GALES's residence at 1510 Kappel Drive.  Investigators located a Smith & Wesson .40 caliber handgun, which was later discovered to have been reported stolen, in the master bedroom of the residence. Investigators seized $46,000 in United States Currency from a second bedroom.  In the basement, investigators found a Taurus "Judge" .40 caliber revolver, two cell phones, empty kilogram wrappers, drug paraphernalia, and black latex gloves.  Investigators also located suspected cocaine and cocaine base inside an open safe in the basement.  Laboratory analysis later confirmed these substances to be 753.8 grams of cocaine and 44.525 grams of cocaine base.

The parties agree that GALES possessed the Smith & Wesson .40 caliber semi-automatic and the Taurus "Judge" .40 caliber semi-automatic handgun on October 28, 2019, and at that time GALES was a convicted felon and knew of his status as a convicted felon prior to and during his possession of the firearms and was, therefore, prohibited from possessing them. The parties further agree that both firearms traveled in interstate commerce prior to GALES'S possession of them on October 28, 2019.  Both firearms were examined by an expert firearms examiner and found to meet the federal definition of a firearm.

Expert testimony in the event of trial would establish beyond a reasonable doubt that individuals trafficking in controlled substances, including methamphetamine, commonly carry firearms to protect themselves, their controlled substances, and the proceeds realized from the sales of controlled substances.  GALES further admits he possessed the Smith & Wesson.40 caliber handgun and the Taurus "Judge" .40 caliber handgun to protect himself against the theft of the cocaine, cocaine base, and U.S. currency in his possession on October 28, 2019, and to protect himself against the theft of additional currency he anticipated receiving upon distributing the

9

cocaine and cocaine base, as well as to protect him against any personal danger he could face because of his possession of and intent to distribute the cocaine and cocaine base.

On January 28, 2021, following GALES's arrest in the instant case and while GALES was on pretrial release, a federal search warrant was executed at the GALE's residence located at 1510 Kappel Avenue, St. Louis, MO 63136. GALES was the target of the search warrant. Agents arrested GALES in a back bedroom with approximately one kilogram of a mixture or substance containing cocaine.

GALES admits he possessed with the intent to distribute and distributed cocaine and cocaine base to others during the conspiracy and in furtherance of the conspiracy.  The amounts of cocaine and cocaine base GALES is accountable for during the conspiracy are not subject to precise calculations.  Based on the totality of the evidence, including from surveillance, seizures described above, and TITLE III wire intercepts, as well as the seizures made from GALES on October 28, 2019, the parties agree to hold GALES accountable for an aggregate amount of converted drug weight of at least 1,000 kilograms but less than 3,000 kilograms.

**5.  STATUTORY PENALTIES:**

**Count One:**

The Defendant fully understands that the maximum possible penalty provided by law for the crimes to which the Defendant is pleading guilty under Count One is imprisonment of not more than life, a fine of not more than $10,000,000, or both such imprisonment and fine.  The Court shall also impose a period of supervised release of at least five years. **The Defendant also fully understands that under this count the law requires that the Defendant serve a mandatory minimum term of imprisonment of at least ten (10) years.**

**Counts Eleven and Twelve:**

The Defendant fully understands that the maximum possible penalty provided by law for the crimes to which the Defendant is pleading guilty under Counts Eleven and Twelve is imprisonment of not less than five years and not more than forty years, a fine of not more than $5,000,000, or both such imprisonment and fine. **The Defendant also fully understands that under these counts, the law requires that the Defendant serve a mandatory minimum of not less than five years imprisonment.** The Court shall also impose a period of supervised release of at least four years.

**Count Thirteen:**

The Defendant fully understands that the maximum possible penalty provided by law for the crime to which the Defendant is pleading guilty under Count Thirteen is imprisonment of not more than ten years, a fine of not more than $250,000, or both such imprisonment and fine. The Court also may impose a period of supervised release of not more than three years.

In certain situations under Title 18, United States Code, Section 924(e)(Armed Career Criminal), Defendant may be subject to a mandatory minimum sentence of imprisonment of fifteen (15) years and a maximum of life, a fine of not more than $250,000, or both such imprisonment and fine, and a term of supervised release of not more than five years. The Defendant is pleading guilty with full knowledge of these possibilities, has discussed these possibilities with counsel and will not be able to withdraw the guilty plea if the Court determines the foregoing statute applies to Defendant's sentence.

**6.  U.S. SENTENCING GUIDELINES:  2018 MANUAL:**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.  The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

**COUNTS ONE, ELEVEN, and TWELVE CALCULATIONS**

**a.  Chapter 2 Offense Conduct:**

**(1)  Base Offense Level:**  As to Counts One, Eleven, and Twelve, the parties agree that the base offense level is 30, as found in Section 2D1.1(c)(5).  The parties agree that the quantity of converted drug weight for which the Defendant is accountable, including relevant conduct, is more than 1000 kilograms and less than 3000 kilograms, resulting in the agreed Base Offense Level.

**(2)  Specific Offense Characteristics:**  As to Counts One, Eleven, and Twelve, the parties agree that the following Specific Offense Characteristics apply: 2 levels should be added pursuant to Section 2D1.1(b)(1) because a dangerous weapon, a firearm, was possessed.

**b.  Chapter 3 Adjustments:**

**(1)  Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known.  If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the

12

court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

**c.  Estimated Total Offense Level:**  The parties estimate that the Total Offense Level is 29 unless defendant is a Career Offender.  Depending on the underlying offense and defendant's criminal history, defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI.  Defendant has discussed this possibility with defense counsel.  Both parties reserve the right to argue that the defendant is or is not a Career Offender.

## COUNT THIRTEEN CALCULATIONS

a.      **Chapter 2 Offense Conduct**:

(1)  **Base Offense Level**:  The parties agree that the base offense level is found in Section 2K2.1 and depends on the nature of the firearm, the defendant's criminal history and other factors therein.

(2)   **Specific Offense Characteristics**:   The parties agree that the following Specific Offense Characteristics apply: two levels should be added pursuant to Section 2K2.1(b)(4)(A) because the Smith & Wesson .40 caliber semiautomatic firearm was stolen; four levels should be added pursuant to Section 2K2.1(b)(6)(B) because the defendant used or possessed the firearm in connection with another felony offense.

b.      **Chapter 3 Adjustments**:

(1)  **Acceptance of Responsibility**:  The parties recommend that two (2) levels should be deducted pursuant to Section 3E1.1(a), because the defendant has clearly demonstrated

13

acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

(2) **Other Adjustments**: The parties agree that the following additional adjustments apply: None.

c. **Other Adjustment(s)/Disputed Adjustments**: None.

d. **Estimated Total Offense Level**: The parties agree that with respect to Count Thirteen the Total Offense Level will depend on the Base Offense Level determined pursuant to Section 2K2.1(a), along with other relevant factors stated above, unless Defendant is an Armed Career Criminal. Depending on the underlying offense and Defendant's criminal history, Defendant could be an Armed Career Criminal pursuant to Title 18, United States Code, Section 924(e) and Section 4B1.4. If the Court finds Defendant is an Armed Career Criminal, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the Defendant is or is not an Armed Career Criminal

**CALCULATIONS APPLICABLE TO ALL COUNTS**

**d.  Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The

defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**e.  Effect of Parties' U.S. Sentencing Guidelines Analysis:**  The parties agree that the Court is not bound by the Guidelines analysis agreed to herein.  The parties may not have foreseen all applicable Guidelines.  The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7.  WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a.  Appeal:**  The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1)  Non-Sentencing Issues:**  The parties waive all rights to appeal all non jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

**(2)  Sentencing Issues:**   In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than

Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and sentences the defendant within or above that range.

**b.  Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c.  Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.  OTHER:**

**a.   Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b.   Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c.   Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.   These conditions will be restrictions on the defendant to which the

defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished.

    **d.  Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $400, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

    **e.   Possibility of Detention:**  The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

    **f.   Fines, Restitution and Costs of Incarceration and Supervision:**  The Court may impose a fine, costs of incarceration and costs of supervision.  The defendant agrees that any fine imposed by the Court will be due and payable immediately

    **g.   Forfeiture:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities.  Defendant specifically agrees to the forfeiture of the following:

    a.  One olive green FN Herstal 5.7 x 28 caliber semi-automatic pistol bearing serial number 38649116;

    b.  One black KelTec 9 mm semi-automatic pistol bearing serial number AHR24;

    c.  Approximately forty-six thousand dollars ($46,000.00) in United States Currency seized from RONARLD FREDERICK GALES on October 28, 2019.

17

The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence.  The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners.  The defendant knowingly and intelligently waives all constitutional and statutory challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States.  The defendant agrees that said items may be disposed of by law enforcement officials in any manner.

## 9.  ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine

18

adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses.  The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding.  The defendant's counsel has explained these rights and the consequences of the waiver of these rights.  The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel.  The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel.  Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation.  In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory.  Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10.  VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the

government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11.  CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12.  NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

20

6/1/21
_____
Date

LISA M. YEMM
Assistant United States Attorney

5 - 19 - 21
_____
Date

RONALD FREDERICK GALES
Defendant

5/24/21
_____
Date

JERMAINE WOOTEN
Attorney for Defendant

21